UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARSENIO SUAREZ,

      Petitioner,

v.                                  CASE NO. 6:10-cv-1179-Orl-36GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 10).  Petitioner filed a reply to the response (Doc. No. 13) and an amended reply (Doc. No. 15).

Petitioner alleges four claims for relief in his habeas petition: (1) trial counsel misadvised him with respect to the sentence he would receive after pleading guilty to violating his probation; (2) trial counsel was ineffective for failing to object to the 160 points added to his scoresheet; (3) trial counsel was ineffective for failing to advise him of an available defense to the violation of probation; and (4) trial counsel was ineffective for

failing to move for a downward departure sentence. For the following reasons, the Court finds that Petitioner is not entitled to relief on his claims.

## I.    *Procedural History*

Petitioner was charged with five counts of lewd or lascivious battery. Petitioner entered into a negotiated plea whereby Petitioner agreed to plead guilty to counts four and five in exchange for ten years of sex offender probation. On March 17, 2007, a warrant was issued for Petitioner's arrest for violating his probation. Petitioner entered a nolo contendere plea to the violation of probation ("VOP"), and the trial court sentenced Petitioner to concurrent terms of 186.75 months in prison. Petitioner did not appeal.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and alleged four claims. The trial court held an evidentiary hearing on Petitioner's claims and then denied the motion. The Fifth District Court of Appeal affirmed *per curiam*. The instant federal petition for writ of habeas corpus follows.

## II.   *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

2

State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts."  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The "unreasonable application" inquiry "requires the state court decision to be more than

3

incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B.      Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).   *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.   *Newland*, 527 F.3d at 1184.   In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]   *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009).   A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct.  1411, 1420 (2009) (citing *Yarborough v.  Gentry*, 540 U.S. 1, 5-6 (2003)).   In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the United States Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  *Id.*   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir. 1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").   "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

III.    *Analysis*

A.    *Claim One*

Petitioner claims that trial counsel misadvised him with respect to the sentence he

would receive after pleading guilty to the VOP (Doc. No. 1 at 5).  In support of this claim, Petitioner alleges that counsel advised him that if he entered a plea to the VOP, his probation would be reinstated.  *Id.*  Petitioner further asserts that counsel never told him that the Court could impose any sentence up to the statutory maximum.  *Id.*  Petitioner also argues that witness Cindy Balay ("Balay") would have testified that she was present when counsel promised Petitioner that he would be reinstated to probation.  *Id.* In his reply, Petitioner states that he also would have called Dr. Greico, his counselor, to testify on his behalf.  However, Petitioner does not allege the substance of Dr. Greico's testimony (Doc. No. 15 at 3-5).

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. D at 35-36).  The state court held an evidentiary hearing on this claim.  At the hearing, defense counsel David Faulkner ("Faulkner") testified that although he had discussed with Petitioner the "possibility" or "hope" that the trial judge would reinstate probation if Petitioner entered a nolo contendere plea to the VOP, he also discussed the fact that the trial court could sentence Petitioner to the maximum prison term, thirty years, if the sentences for both counts were run consecutively (App. E at T 8-10, 12).  Faulkner unequivocally stated that he never promised Petitioner that he would be reinstated to probation.  *Id.* at 12.

Petitioner testified that prior to entering a plea on the VOP, Faulkner told him that the trial judge was a "nice judge" and would reinstate his probation.  *Id.* at 10.  Furthermore, Petitioner testified that Faulkner tapped him on the shoulder and assured

him his probation would be reinstated.  *Id.* at 13.   Petitioner later admitted that this

conversation occurred after the change of plea hearing.   However, Petitioner maintained

that counsel had told him, prior to the entry of his plea, that his probation would be

reinstated.  *Id.* at 31-32.  Petitioner also testified that he was under the impression that his

reinstatement to probation was "a done deal" and an agreement had been reached with the

trial judge and the State, although he could not recall any particular conversations in which

his attorney discussed this with him.  *Id.* at 16-20.

Petitioner's sister, Kristine Suarez ("Suarez"), testified that Petitioner believed he

would be reinstated to probation.  *Id.* at 21.  Faulkner told her that "everything look[ed]

good" or looked like sentencing might go in Petitioner's favor.  *Id.* at 24.   On cross

examination, Suarez testified that she had discussed with Petitioner the fact that he might

be sentenced to a term of incarceration.  *Id.* at 27-28.  The trial court then allowed Petitioner

to proffer the testimony Balay would have given were she available for the hearing.  *Id.* at

29.[2]  Petitioner stated that Balay would testify that she was present when Faulkner tapped

Petitioner on the shoulder and told him that the trial judge was nice and would reinstate

him to probation.  *Id.*

The trial court denied this claim and made the following findings of fact:

> The testimony at the evidentiary hearing demonstrated that although
> counsel, David A. Faulkner, advised the Defendant that he hoped the judge
> would reinstate the Defendant's probation if the Defendant engaged in

---

[2]Petitioner informed the trial court that he wanted to call his fiancee, Balay, to testify
but she could not attend the hearing because their son had to be rushed to the hospital.  *Id.*
at 28

counseling and performed community service, there was no guarantee that such would occur.  Mr. Faulkner, whom this court finds credible, testified that he made it very clear to the Defendant that he was taking a chance by pleading without an agreement, but that he hoped the Defendant would be reinstated.  Although the Defendant testified that counsel "assured" him that he would be reinstated, he also testified that the sentencing was set for a later date so he could do more counseling to make it look good to the judge.  As such, this court finds that the counsel [sic] did not affirmatively misadvise the Defendant and the Defendant's plea was voluntary.

(App. D at 120).   On appeal, the Fifth District Court of Appeal affirmed *per curiam* (App. F).

Petitioner has not demonstrated that he is entitled to relief on this claim.  The state court found Faulkner's testimony more credible than Petitioner's testimony.  This Court must accept the state court's credibility determination.  *See, e.g., Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's].").   Additionally, the state court's factual findings are presumed correct, and Petitioner has not rebutted those findings by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The Court also notes that at the plea hearing, Faulkner stated on the record that Petitioner was going to enter a nolo contendere plea with no agreement (App. D at 47).  Petitioner told the trial court that no one had promised him anything in exchange for the plea.  *Id.* at 48-49.  The trial court advised Petitioner that the maximum sentence for each count was fifteen years in prison, however, the court noted that it could run the sentences consecutively, in which case Petitioner could receive a thirty year sentence.  *Id.* at 50.  At

no point did Petitioner tell the trial court that he was advised or promised that his probation would be reinstated. Petitioner's representations to the Court constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 432 U.S. 63, 73-74 (1977). Petitioner has not demonstrated that the state court's determination was contrary to, or involved an unreasonable application of federal law, nor has he shown that the state court's denial of this claim resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Moreover, to the extent that Petitioner alleges that the trial court should have continued the evidentiary hearing so he could call Balay or his former counselor Dr. Greico as witnesses who would support his contention that trial counsel misadvised him with respect to the sentence he would receive, Petitioner cannot demonstrate that he is entitled to relief. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Wright v. Sec'y, Dep't of Corr.*, No. 6:08-cv-618-Orl-35DAB, 2009 WL 5176558, at *3 (M.D. Fla. Dec. 23, 2009). Petitioner's claim regarding Balay and Dr. Grieco's potential testimony is speculative because Petitioner has not presented affidavits from these witnesses. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance

of counsel.  Accordingly, claim one is denied.

### B.      Claim Two

Petitioner claims that trial counsel was ineffective for failing to object to the 160 points that were added to his scoresheet for sexual penetration when the issue of sexual penetration was never presented to a jury (Doc. No. 1 at 8).  Petitioner states that he never admitted to sexual penetration, therefore, the only points that could be scored were for sexual contact.  *Id.*  In his reply, Petitioner also contends that his original scoresheet assessed 80 points for sexual penetration, and the trial court erred by changing the scoresheet after the VOP to assess 160 points (Doc. No. 15 at 5).

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. D at 36-37).  The trial court denied this claim, finding that the 160 points for sexual penetration were properly assessed because Petitioner admitted to the victim injury points by entering a guilty plea.  *Id.* at 121.  The court also noted that the points were properly assessed because the victim testified at her deposition that she and Petitioner had engaged in sexual intercourse and penile/vaginal penetration had occurred.  *Id.*  The Fifth District Court of Appeal affirmed *per curiam* (App. F).

Although Petitioner does not argue that he is entitled to relief pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court construes his claim as asserting *Apprendi* as a basis for relief because he asserts that the victim injury points could not be assessed until they were presented to and found by a jury.  The *Apprendi* Court held that, "[o]ther than

10

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The assessment of 160 victim injury points for sexual penetration increased Petitioner's sentence for each count beyond the statutory maximum of fifteen years. However, in *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the Supreme Court of the United States further stated that the "statutory maximum for *Apprendi* purposes is the maximum a judge may impose solely on the basis of the facts reflected in the jury verdict or *admitted* by the defendant." (emphasis added).

Petitioner entered into a guilty plea to two counts of lewd or lascivious battery, thereby admitting to the crimes (App. D at 9-10). In entering his guilty plea, Petitioner waived his right to contest the factual basis of the plea. *Id.* The information alleged that the Petitioner's penis penetrated *or* had union with the victim's vagina (App. A). Therefore, the information did not specifically allege that the crimes were committed by sexual penetration. Nevertheless, the victim testified during her deposition that she had sexual intercourse with Petitioner, or that sexual penetration had occurred (App. D at 135-38, 140). Petitioner testified that when he entered his guilty plea he knew that the victim's allegations against him were that sexual penetration had occurred (App. E at 37). Thus, Petitioner admitted to the sexual penetration, and the record supports the state court's findings. *See Harter v. Sec'y, Dep't of Corr.*, No. 8:08-cv-202-T-27EAJ, 2011 WL 761546, at * 18-19 (M.D. Fla. Feb. 24, 2011) (denying the petitioner's claim that the assessment of victim injury points violated *Blakely* and *Apprendi* where the petitioner entered into a nolo

11

contendere plea and the State presented a sufficient factual basis for the charges that indicated victim injury had occurred).

Moreover, to the extent that Petitioner alleges that the trial court improperly amended his original scoresheet by adding an additional 80 points for sexual penetration after the VOP, Petitioner has not shown that he is entitled to relief.[3]  Florida law permits the assessment of additional victim injury points upon a violation of probation despite the fact that the points were not assessed during the original sentencing.  *See Aponte v. State*, 810 So. 2d 1008, 1011 (Fla. 4th DCA 2002).  Petitioner has not cited to, and this Court is not aware of, any United States Supreme Court precedent that prohibits the assessment of additional victim injury points after a VOP when such points could have been assessed during the initial plea proceedings.  Accordingly, the Court cannot say that the state court's determination of this claim was contrary to, or resulted in an unreasonable application of, clearly established law.  Claim two is denied pursuant to § 2254(d).

## C.    *Claim Three*

Petitioner claims that trial counsel was ineffective for failing to advise him of an available defense to the VOP (Doc. No. 1 at 11-12).  In support of this claim, Petitioner alleges that trial counsel did not advise him that he could argue the violations  were not willful and substantial.  *Id.* at 12.  Specifically, Petitioner states that he did not fail to submit monthly driving logs and was not "unsuccessfully discharged" from his sex offender

---

[3]Petitioner originally was assessed 80 victim injury points for sexual penetration, however, the trial court could have assessed up to 160 points during the original plea proceedings.

treatment.  *Id.* at 12-13.  Petitioner contends that if counsel had investigated these issues and advised him that he had a viable defense to the VOP, he would not have entered a plea to the VOP.  *Id.* at 13.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. D at 37-38).  The trial court held an evidentiary hearing on this claim, after which it denied relief (App. D at 122).   The trial court stated that Petitioner's decision not to challenge whether he had willfully and substantially violated his probation was a matter of trial strategy.  *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. F).

Faulkner testified at the evidentiary hearing that he advised Petitioner of the fact that they could argue that the violations were not willful (App. E at 49).  However, counsel explained that even if they had attempted to use this defense, the trial court still could find the violations were willful and then the court might also have felt that Petitioner had not taken responsibility for his actions.  *Id.*  Faulkner stated that Petitioner agreed the best strategy was to accept responsibility for the violations and try to show the trial court he was complying with the conditions of probation and therefore was entitled to a second chance.  *Id.* at 49-50.  Petitioner admitted that Faulkner had discussed this strategy with him before he entered his nolo contendere plea.  *Id.* at 58.

Petitioner has not demonstrated that he is entitled to relief with respect to this claim. The Supreme Court of the United States has noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Moreover, the Court

stated that "strategic choices made after less than complete investigation are reasonable . . . to the extent . . . professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*  Counsel's decision that Petitioner should admit the VOP but argue he was now complying with the conditions of probation was a matter of trial strategy, and Petitioner has not demonstrated that this strategy was unreasonable.

Additionally, Petitioner testified at the plea hearing that he understood he had the right to a hearing at which the State would be required to prove that he violated his probation (App. D at 49).  Petitioner also agreed that the State could prove by a preponderance of the evidence that he failed to maintain a monthly driving log and was unsuccessfully discharged from treatment. *Id.* at 50-51.  Petitioner's representations to the Court carry a strong presumption of truth and Petitioner has not shown that this Court should overlook that presumption. *Blackledge*, 432 U.S. at 73-74.  Petitioner has not demonstrated that the state court's determination was contrary to, or involved an unreasonable application of federal law, nor has he shown that the state court's denial of this claim resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, claim three is denied pursuant to § 2254(d).

### D.    Claim Four

Petitioner alleges that trial counsel was ineffective for failing to move for a

downward departure sentence (Doc. No. 1 at 16).  Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. D at 40-41).  The trial court denied this claim, finding "[c]ounsel cannot be deemed ineffective for failing to file a written motion and a proposed order delineating the reasons for a departure sentence as there is no requirement that counsel do so." *Id.* at 123.  The Fifth District Court of Appeal affirmed *per curiam* (App. F).

Florida Rule of Criminal Procedure 3.704(d)(25) provides that "[t]he lowest permissible sentence is the minimum sentence that may be imposed by the trial court, absent a valid reason for departure."  The rule also prohibits a downward departure unless there "are circumstances or factors that justify the downward departure." Fla. R. Crim. P. 3.704(d)(27).  Thirteen circumstances under which a downward departure is reasonably justified are listed in the Florida Statutes,  *See* Fla. Stat. § 921.0026(2).  In order to impose a departure sentence, a trial court must first have a legal ground to issue a departure sentence. *See State v. Johnson*, 79 So. 3d 146, 147 (Fla. 4th DCA 2012).

Petitioner's lowest permissible sentence on his scoresheet was 186.75 months, which the trial court was required to impose unless there were reasons for a departure sentence. Petitioner has not stated what legal ground the trial court had for departing from the lowest permissible sentence.  Moreover, even if the trial court had a valid legal ground for departure, the trial court then had the discretion to determine whether a departure is "the best sentencing option for the defendant in the pending case." *Id.*  (citing *Banks v. State*, 732 So. 2d 1065, 1068 (Fla. 1999)).  Petitioner's argument that had counsel argued for a

downward departure, such a sentence would have been granted is speculative and conclusory and as such, does not warrant relief.  *See Tejeda v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel).  Petitioner has not demonstrated that the state court's determination of this claim was contrary to, or resulted in an unreasonable application of, clearly established federal law. Accordingly, claim four is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.     *Certificate of Appealability*

A prisoner seeking to appeal a  district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

16

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     The Petition for Writ of Habeas Corpus filed by Arsenio Suarez (Doc. No. 1)

is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall

enter judgment accordingly.

2.     Petitioner is **DENIED** a Certificate of Appealability.

3.     The Clerk of the Court is directed to **close** this case.

**DONE AND ORDERED** in Orlando, Florida, this 10th day of April, 2013.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 4/10
Counsel of Record
Arsenio Suarez

17